## ARGUED AND DETERMINED

IN THE

# Supreme Court of the State of Georgia,

## AT SAVANNAH,

# JUNE TERM, 1862.

PRESENT—JOSEPH H. LUMPKIN, ⎫
RICHARD F. LYON,  ⎬ JUDGES.
CHARLES J. JENKINS, ⎭

JOSEPH W. PHILLIPS, plaintiff in error, *vs.* THE STATE, defendant in error.

1. When one who is charged with a theft, sets up as a part of his defense, that there was a negro boy about the place who might have committed the theft, it is competent for the State, on the trial, to give in evidence the manner and conduct of the negro, on the discovery of the stolen article, as a reply to that hypothesis.
2. And so it is no error in the Court, when the article stolen is found concealed in the back yard of the accused, to argue to the jury in the charge, the improbability of a third person or stranger being the thief under the circumstances.
3. The accused, who had heard before the trial of a witness whose testimony would be important to his defense, applied to such witness to learn what the witness would testify; the witness told him that he knew nothing; but after the trial and conviction, the accused learned the facts to which the witness would testify, and these being material, and such as would likely produce a different verdict: *Held*, that a new trial ought to have been granted, on the ground of newly discovered evidence.

Larceny, in Chatham Superior Court. Tried before Judge FLEMING, at January Term, 1861.

Joseph W. Phillips, indicted for larceny, was put upon his trial, at January Term, 1861, of Chatham Superior Court. The State produced the following testimony:

F. L. NEACE sworn, says: Between six and seven o'clock of the morning of the day mentioned in the indictment, I went to Wayne's stables to purchase some mules; he was not in, and I then went to prisoner's store and purchased a few things, and taking my pocket-book out, I left it on a barrel, or on the counter, in prisoner's store. I forgot it, and then went back to stable and missed my pocket-book. I then went back to the store, and asked prisoner if he had seen it; he said he had not. By the advice of Mr. Richardson I got a search-warrant, and found the pocket-book under a wood-pile in prisoner's yard. There were $225 00 in the book. (The witness here described the bills.) I know the pocket-book well, and found the same amount of bills in it as when I lost it; there was a memorandum in the book written by myself. Prisoner said he would hold me accountable for the warrant. Did not see pocket-book found by officer. There was no person in the store except the prisoner's wife. While I was going out Mr. James Ernst stepped in. It was about fifteen minutes from the time I left the store until I returned. Did not see any black boy in the store. Think it was between eleven and twelve o'clock when I obtained the warrant. I was in the store when officer found pocket-book in the yard. We searched his pockets and his drawers, and then officer went into the yard. When the pocket-book was found, a black boy was called by prisoner, and came in.

WILLIAM WRAY testifies: I read the warrant to prisoner, and proceeded to search; went into his private room and searched there; then went into his yard, prisoner followed me; the further I went into the yard the more he receded back to the house. I went around a bend in the yard, and found a five-cent piece, and looking under the wood-pile I found the pocket-book, which Mr. Neace identified. Mr. Phillips appeared surprised when I brought the pocket-book in, he appeared alarmed. The black boy ap-

peared pleased when the pocket-book was found; he danced. He is about fourteen years of age.

CROSS-EXAMINED.—Prisoner's actions attracted me to search in the yard; he made no opposition to search.

Defendant objected to that part of the testimony relating to the conduct of the negro boy when the book was found.

The objection was overruled, and defendant excepted.

No evidence was offered by defendant, and the jury, after being charged by the Court, returned a verdict of guilty, with a recommendation of mercy to the Court. Defendant moved for a new trial on various grounds, which are fully stated in the decision of the Court overruling the motion. Two grounds, the 4th and 6th, were abandoned in the argument before the Supreme Court, and are not inserted here.

Judge Fleming's opinion on the motion for new trial:

Each ground of this motion for a new trial will be considered in its order. The first is, " Because the Judge erred in permitting the witness Wray to testify before the jury what was the conduct of a negro boy in the presence of Phillips, in the employ of prisoner at the time of the larceny, when the stolen pocket-book was found in prisoner's yard." Suppose the conduct of the black boy had been such as to authorize the opinion that he was the thief, would it not have been good evidence for the defendant? If his conduct was such as to authorize the belief that he was not the thief, why is it not good evidence for the prosecution? The prisoner's defence rested in part upon the fact that this black boy may have been the thief. If his conduct at the time negatived this idea, why is it not evidence to be submitted to the jury? Was not his conduct a part of the *res gestæ?* Suppose that when the search commenced he had been alarmed and made his escape, would not such conduct on his part have been strong evidence in favor of the prisoner? If it be true that if his conduct had shown guilt it would have been good evidence for the defence, I cannot see why his conduct should be excluded from the jury simply, because it does not show guilt. If his conduct at the time of the search be good evidence on one side, it must be good evidence on the other side.

It would not be, in either case, very conclusive evidence, I admit, but surely it is evidence that ought to be submitted to the jury. Why should the jury be left to infer that the boy stole the pocket-book, when his conduct at the time would authorize a very different conclusion ? especially, when there was no proof that the boy was in the store when the prosecutor left, or had been in the store during the fifteen minutes that elapsed before his return.

Second. "Because the Judge erred in his charge to the jury in this, to wit: 'That he intimated his opinion on the facts in telling the jury, (it being proven that Ernst was in the store when the pocket-book was left or lost) that they should consider whether if he, Ernst, had taken the pocket-book he would most likely have carried it with him, or left it in Phillips' yard." Ernst having been in the store at least some portion of the fifteen minutes, it was of course possible that he took the pocket-book. The jury then had to decide under the testimony, whether Ernst or Phillips took it. I don't think that I mentioned Ernst's name in my charge, but charged the jury generally, that it was a matter for their consideration whether if a stranger had taken the pocket-book he would most likely have carried it away with him, or have left it in Phillips' yard. I don't think that this is an expression of opinion upon the facts. It was for the jury to say, under the testimony, whether any one else could have taken the pocket-book, and if they found that it was possible, then it was for them to say whether it had been carried away or left in the yard. I did not tell them that the pocket-book had been left in the yard.

Third. "That the Judge erred in his charge to the jury, (the fact being in evidence that a negro boy was usually about the store of prisoner, and in his employ,) that they should not take that fact into consideration, unless it was also proven that said boy was in or about the store during the fifteen minutes that the prosecutor left or lost his pocket-book, and the time he returned to look for it." The fact that the boy was in the employment of Phillips is certainly no proof that he took the pocket-book. Even if he had been

in the store during the fifteen minutes, it would not prove the fact, but only that it was possible. Surely I could not have erred in charging the jury that the facts must show the *possibility* that the boy took the pocket-book before they came to that conclusion.

Fifth. "Because of the newly discovered testimony of Leopold Spieldoc, as set forth in his affidavit hereto attached, and which has come to the knowledge of the prisoner since the case was submitted to the jury."

In support of this ground, affidavits both of the prisoner and the witness were offered. That of the defendant, states that on the morning of the alleged larceny, Ernst came into his store before the prosecutor left; that he purchased a dollar's worth of coffee, and proposed to purchase more if deponent would give him a bag to put it in. Deponent called his negro boy, who waits about the store, and sent him up stairs for a bag. The boy went and returned with a bag having a hole in it. Deponent sent him again for another bag, and after some delay he returned with a good one. Deponent had Ernst subpœned, and Ernst told deponent's counsel that he was in the store before Neace left; that he remembered the circumstances of the bag and the coffee, but could not recollect whether it was on the morning of the larceny, or some other time. Deponent says further, that he had heard before the trial that Leopold Spieldoc could probably give testimony which would operate in deponent's favor, and deponent called on Spieldoc, and was told by him he did not remember about it. Since the case was submitted to the jury deponent has discovered that Spieldoc could give important testimony when taken in connection with what Ernst can prove, and refers to Spieldoc's affidavit. Deponent further states, that he used all diligence before the trial to ascertain what Spieldoc knew or could testify, but failed in eliciting any information, and therefore did not subpœna him.

SPIELDOC deposes, that between six and seven o'clock in the morning of the day in which the pocket-book was stolen, he stepped into prisoner's store, and found prisoner waiting on a customer, weighing out coffee, he thinks. He did not

see the customer's face, only his back, but knows he was a white man, and from circumstances believes him to have been Mr. Ernst, of Effingham county. Deponent did not stop in the store, but passed directly into the yard and to the privy, and as he stepped from the store into the yard, the negro boy Phillips had in his employ jumped up from the wood-pile in the yard, and appeared frightened, and ran up stairs with an empty bag in his hand, the store and dwelling being one building. After a little, deponent returned to the store, and the customer had left. Deponent further says, Mr. Phillips called on him, before the trial, to say what he remembered of the circumstances, but not wishing to appear in Court deponent pretended that he had forgotten all about it. Since the trial deponent has learned that this testimony was important, and regrets not telling Phillips what he recollected of the circumstances. He mentioned the above facts to Mr. Levi Hart, at the arsenal, on the day of the trial, and he was the first man to whom he told the circumstances in full.

In deciding this ground the Judge says: It appears from the affidavit of the defendant, himself, that he had heard that Spieldoc could give testimony favorable to him. He then knew of the witness. True, he also swears that he called upon the witness, who told him he did not remember about it. Is this a sufficient excuse for going to trial without the witness? He had heard that Spieldoc could give important testimony. Did it not occur to the defendant that his information must have come originally from Spieldoc himself? Was it not negligence to rely upon the statement of Spieldoc that he did not remember about it, when he must have known that Spieldoc had made a different statement, for he must have made a different statement, or he, Phillips, never could have heard that Spieldoc could give testimony in his favor. The information must necessarily have come originally from Spieldoc himself. When the defendant heard that Spieldoc could give testimony in his favor, did he not also hear what that testimony would be? He says nothing about this in his affidavit. In the absence of this denial may we not fairly infer that he did hear? Why then did he not put Spieldoc

on the stand? It was not because he had not heard of him as a witness, it was not because he had not heard of his testimony, but because Spieldoc told him, when applied to, that he did not remember about it. Is this a sufficient excuse? I think not. The motion for new trial is refused.

The refusal to grant a new trial was excepted to by defendant, and is alleged to be error.

E. H. BACON, for plaintiff in error.

TUPPER, Solicitor General, for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

1. There was no error in the Court permitting the witness, Wray, to testify as to the conduct and action of the negro boy, when the search was made and the pocket-book discovered. It was a part of the defense of the prisoner, that as the negro was about the store when the theft was committed, it was possible that he might have been the thief, and any evidence that had a tendency to break down or destroy this theory was admissible. We do not say that the emotions of joy or pleasure exhibited by the boy, as sworn to by the witness, were sufficient for that purpose. All we say is, that it was competent, and it was for the jury to determine its effect.

2. For a similar reason there was no error in the argument presented by the Court—not an opinion on the facts of the unlikelihood of a stranger being the thief, when the pocket-book and money were left concealed on the premises. This view, a very plausible one, to say the least of it, served to destroy any other theory than that the money must have been stolen by some one on the premises.

The Court, upon consultation, was of the opinion that there was no error in the charge, as stated in the third ground of the motion for new trial, but upon a more careful consideration than we gave it at that time, I have some doubt as to its propriety, or rather its necessity, under the circumstances. I can not say that it was erroneous, but speaking for myself alone, I prefer that the charge should not be given. I can-

not with reason justify it. A man has a negro boy in attendance upon the store, who is running in and out probably every. five minutes, a pocket-book is left carelessly on the counter or the head of a barrel, and in fifteen minutes disappears. To exclude from the jury entirely the probability, or even possibility, that the boy might, in passing in and out, have taken the pocket-book, unless the proprietor, who is charged with its abduction, without any positive proof whatever to sustain the charge, can show that in the interim the boy was in the store, is going a great ways, to say the least of it.

The fourth and sixth grounds of the motion for new trial were abandoned by counsel for plaintiff in error. in the argument before this Court.

A new trial ought to have been granted, on the ground of newly discovered evidence of the witness, Spieldoc. The testimony that the negro boy was down at the wood-pile, and jumped up from the place where the pocket-book was concealed, frightened, and at or about the time when the book and money must have been stolen, would have a strong tendency to remove the presumption of guilt that otherwise attaches to the prisoner, and with the testimony of Ernst, that the negro boy did come in and go out with the bag, while he was there, would be entirely sufficient to, and ought to, induce a different verdict from the jury. I am aware that Ernst was not sworn, but it is in evidence that he was present, and if the facts stated by the witness, Spieldoc, are true, Ernst's testimony would be likely to corroborate it, but whether it would or not, the evidence is material and important, and might justly of itself change the result. The plaintiff in error was guilty of no laches in his effort to get this evidence—knowing that Spieldoc was in the store, he called upon him, before the trial, to learn what he knew that would make in his favor. The witness told him that he knew nothing, thus accidentally or by design, misleading the accused, who was not bound in consequence to subpœna or compel his attendance as a witness. What Spieldoc did know and would swear, the prisoner never learned until after the

trial. We think the plaintiff in error in the showing came fully up to the rule to obtain a new trial on the ground of newly discovered evidence in all respects.

Let the judgment be reversed.